UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JALEAH FIELDS | CIVIL ACTION |
| VERSUS | NO. 25-1475 |
| NUCOR CORPORATION, *et al.* | SECTION M (4) |

## ORDER & REASONS

Before the Court is a partial motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure filed by defendants Nucor Corporation and Nucor Steel Louisiana, LLC (together, "Nucor").[1] Plaintiff Jaleah Fields responds in opposition,[2] and Nucor replies in further support of its motion.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons granting the motion in part and denying it in part.

**I.    BACKGROUND**

This case concerns claims of employment discrimination based on race and sex. Fields, a Black woman, worked at Nucor's steel manufacturing plant in Convent, Louisiana, as a material handling operator.[4] On October 26, 2023, during a group conversation, a white male teammate, Caleb Tharp, said the "N-word" in front of Fields, her crew, and supervisors Matt Lesaicherre and Lance Gillis.[5] Fields was the only Black person in the group.[6] Lesaicherre and Gillis, the two

---

[1] R. Doc. 12.
[2] R. Doc. 20.
[3] R. Doc. 23.
[4] R. Doc. 1 at 2-3. The factual background is taken from the allegations in the complaint, which are deemed to be true at this motion-to-dismiss stage of the proceedings.
[5] *Id.* at 3-4.
[6] *Id.* at 4.

supervisors present, "spun their heads to look at Ms. Fields and see her reaction."[7] Fields responded to the remark by saying, "Excuse me?," while everyone else "remained silent and ducked their heads down."[8] Gillis walked away from the group, but returned "after a few seconds."[9] Tharp insisted that "he was joking and claimed it was a 'chant.'"[10] He then said the "N-word" again, "but this time drawing out the word," and "tried to justify his actions by saying he 'has a Black girlfriend.'"[11] Neither Gillis nor Lesaicherre reprimanded Tharp, but "instead chang[ed] the subject and direct[ed] the group's attention back to work."[12] Fields was "upset at the comment and discouraged" that neither supervisor "said anything to Mr. Tharp after hearing him use the N-word."[13]

Shortly after the October 26 incident, Gillis, a white male, texted to Fields "a video of two Black men repeatedly using the N-word, one of them saying 'that's gotta be racist' and 'you're saying it with the long R.'"[14] Fields did not respond and "felt that Mr. Gillis was making light of Mr. Tharp saying [the 'N-word'] and treating it like a joke."[15]

Lesaicherre texted Fields to ask her "if she wanted to talk about what happened with Mr. Tharp."[16] Fields and Lesaicherre later spoke on the phone and arranged to meet in Lesaicherre's office the same day.[17] During the meeting, Lesaicherre asked Fields what she wanted to do about Tharp's use of the racial slur to which Fields replied, "'I guess nothing,'" explaining that she thought that Lesaicherre, as Tharp's supervisor, should have addressed the situation when it

---

[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.* at 5.
[17] *Id.*

occurred.[18] Tharp was not disciplined and neither supervisor reported his conduct to anyone else for further investigation.[19]

On November 29, 2023, Nucor issued to Fields a "First Step Warning" notice for tardiness.[20] Then, on December 27, 2023, Nucor terminated Fields for a safety violation that occurred on December 10, 2023 – namely, speeding into the parking lot at the worksite.[21] Fields claims that she decelerated to 15 mph, the speed limit, when she entered the property.[22] She also alleges that Nucor improperly skipped the second and third levels of its progressive discipline policy in order to fire her.[23] According to Fields, Nucor did not skip any progressive disciplinary steps or terminate employment "when white employees committed more serious safety violations and further had a preceding history of attendance and other disciplinary issues."[24] Fields provides two examples of white males who she says committed more serious safety violations than speeding, but were not terminated.[25]

Fields timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").[26] In the charge, she stated that the discrimination was based on "Race, Sex" and described the particulars as follows:

> I was hired by Nucor Steel Louisiana on or about March 2018, most recently as an Operator. I have been discriminated against because of my Race-Black/African American, Sex-Female in that I was discharged for speeding through work area and running stop sign on or about December 11, 2023; while Jason Sanders (White) also had similar incident but was only suspended for 3 days. Also, on or about July 13, 2023; Larry M. (White) was speeding on a golf cart and suspended for 3 days. Also, coworker Kaleb LNU (White) on or about October 26, 2023, made inappropriate comment using the "N word" in front o[f] Supervisor Matt L. (White)

---

[18] *Id.*
[19] *Id.*
[20] *Id.* at 5-6.
[21] *Id.* at 6.
[22] *Id.*
[23] *Id.*
[24] *Id.*
[25] *Id.* at 6-7.
[26] *Id.* at 3; R. Doc. 12-4.

3

> and Lead Lance Gillis (White); I was asked by Matt what I would like him to do about the incident, which I replied, "being that you're asking me what I should do about it, I guess I'll let it go."
>
> According to the company, I was discharged due to egregious violations of safety incident.[27]

The EEOC issued to Fields a right to sue letter, and within 90 days of her receipt of the letter, she filed this suit against Nucor.[28] Fields asserts several employment discrimination claims, including discrimination based on race, discrimination based on sex, hostile work environment based on race, and retaliation.[29]

## II.     PENDING MOTION

Nucor moves to dismiss Fields's retaliation and hostile-work-environment claims for failure to state a claim pursuant to Rule 12(b)(6).[30] Nucor argues that the retaliation claim must be dismissed for failure to exhaust administrative remedies because Fields did not include it in the charge of discrimination she filed with the EEOC.[31] Additionally, says Nucor, Fields's retaliation claim fails because she did not engage in a protected activity as she did not oppose a discriminatory practice.[32] Nucor also seeks dismissal of Fields's hostile-work-environment claim, arguing that she has not alleged sufficient facts to show pervasive discrimination that affected a term or condition of her employment.[33]

In opposition, Fields argues that her *pro se* EEOC charge of discrimination alleged sufficient facts regarding Nucor's retaliatory conduct to reasonably expect the EEOC investigation to encompass such a claim.[34] Fields says that the charge suggests that her supervisor's conduct

---

[27] R. Doc. 12-4 at 2.
[28] R. Doc. 1 at 3.
[29] *Id.* at 7-10.
[30] R. Doc. 12.
[31] R. Doc. 12-3 at 3-5.
[32] *Id.* at 5-6.
[33] *Id.* at 6-9.
[34] R. Doc. 20 at 5-8.

discouraged her from continuing to complain about Tharp's conduct and that she was terminated shortly afterwards for a safety violation, which according to Fields, "gives rise to the reasonable suggestion that she contemplated a connection between the discrimination complaint to her supervisor and the pretextual termination that quickly followed."[35] Fields further argues that she stated a retaliation claim because she reasonably believed that the use of the "N-word" by a coworker and a supervisor constituted an unlawful employment activity that she opposed.[36] With respect to her hostile-work-environment claim, Fields contends that the harassment by Tharp and Gillis was enough to have affected a term, condition, or privilege of her employment because Nucor failed to take corrective action and fired her shortly after the incident.[37]

Nucor replies, reurging that Fields did not exhaust her administrative remedies as to the retaliation claim.[38] Nucor points out that Fields's EEOC charge of discrimination does not mention retaliation or assert facts showing that she engaged in protected activity that caused an adverse employment action.[39] According to Nucor, there is no way that a retaliation claim could "grow out of" the allegations in the EEOC charge because they did not put the EEOC or Nucor on notice of a retaliation claim.[40] With respect to Fields's hostile-work-environment claim, Nucor argues that Fields has not alleged sufficient facts to show the required pervasive harassment.[41] Instead, says Nucor, Fields points to isolated incidents of the use of a racial slur that were not directed at her.[42]

---

[35] *Id.* at 7.
[36] *Id.* at 8-11.
[37] *Id.* at 11-13.
[38] R. Doc. 23 at 1-5.
[39] *Id.*
[40] *Id.*
[41] *Id.* at 5-6.
[42] *Id.*

5

### III. LAW & ANALYSIS

#### A. Rule 12(b)(6) Standard

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The statement of the claim must "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A pleading does not comply with Rule 8 if it offers "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration omitted) (quoting *Twombly*, 550 U.S. at 555, 557).

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on the face of the complaint "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Plausibility does not equate to probability, but rather "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Thus, if the facts

pleaded in the complaint "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* at 679 (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court employs the two-pronged approach utilized in *Twombly*. The court "can choose to begin by identifying pleadings that, because they are no more than conclusions [unsupported by factual allegations], are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "'[The] task, then, is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.'" *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 385 (5th Cir. 2017) (quoting *Doe ex rel. Magee v. Covington Cty. Sch. Dist.*, 675 F.3d 849, 854 (5th Cir. 2012)).

A court's review of a Rule 12(b)(6) motion to dismiss "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)). A court may also take judicial notice of certain matters, including public records and government websites. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008); *see also Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005). Thus, in weighing a Rule 12(b)(6) motion, district courts primarily look to the allegations found in the complaint, but courts may also consider "documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters of public

7

record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Meyers v. Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

## B. Analysis

### 1. Retaliation Claim

Prior to filing suit in federal court, a plaintiff alleging discrimination claims must exhaust administrative remedies by filing a timely charge of discrimination with the EEOC and receiving a statutory notice of right to sue. *Jones v. City of Hous.*, 756 F. App'x 341, 348 (5th Cir. 2018) (citing 42 U.S.C. § 2000e-5(f)(1); *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002)). In a deferral state, such as Louisiana,[43] a plaintiff must file a charge with the EEOC within 300 days from the date of the alleged discriminatory act to preserve the right to sue in federal court. *DeBlanc v. St. Tammany Par. Sch. Bd.*, 2015 WL 1245781, at *6 (E.D. La. Mar. 18, 2015) (citing 42 U.S.C. § 2000e-5(e)(1), which provides that a Title VII plaintiff must file a charge within 300 days after the alleged unlawful employment practice in deferral states).

The scope of an EEOC complaint is liberally construed to determine whether a plaintiff has administratively exhausted a particular claim. *Patton v. Jacobs Eng'g Grp., Inc.*, 874 F.3d 437, 443 (5th Cir. 2017) (citing *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006)). "'On the other hand, a primary purpose of Title VII is to trigger the investigatory and conciliatory procedures of the EEOC, in attempt[ing] to achieve non-judicial resolution of employment discrimination claims.'" *Id.* (quoting *Pacheco*, 448 F.3d at 788-89). Balancing these considerations requires a court to interpret "what is properly embraced in review of a Title-VII claim somewhat broadly, not solely by the scope of the administrative charge itself, but by the

---

[43] States with a state or local administrative mechanism are referred to as deferral states and those without such an agency are referred to as non-deferral states.

scope of the EEOC investigation which 'can reasonably be expected to grow out of the charge of discrimination.'" *Id.* (quoting *Pacheco*, 448 F.3d at 789). Thus, a court engages in a "'fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look[s] slightly beyond its four corners, to its substance rather than its label.'" *Id.* (quoting *Pacheco*, 448 F.3d at 789).

Fields's EEOC charge of discrimination neither specified that she was bringing a retaliation claim, nor did it allege facts out of which a retaliation investigation could have been expected to grow. Fields specified that her EEOC charge was based on "Race, Sex" discrimination.[44] She then stated facts to support such claims – namely, that she, a Black female, was fired for a safety violation whereas white male colleagues who committed similar infractions were only suspended for three days.[45] In the charge, Fields also alleged facts that support a hostile-work-environment claim when she described Tharp's use of the "N-word" on October 26, 2023, and her supervisor's response to it.[46] What is missing is an allegation that she engaged in a protected activity, which is a required element of a retaliation claim.[47] Indeed, Fields alleged the opposite – specifically, that when Lesaicherre asked her what she wanted to do about the incident with Tharp, she said that she did not want to do anything about it.[48] An investigation into retaliation cannot be expected to arise from these allegations where there is no reference to such a claim or any mention of a

---

[44] R. Doc. 12-4 at 2.
[45] *Id.*
[46] *Id.*
[47] Title VII prohibits an employer from discriminating against an employee "because [s]he has opposed any practice made an unlawful employment practice by [Title VII], or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a); *see Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 576-77 (5th Cir. 2020) (describing § 2000e-3(a) as Title VII's antiretaliation provision). The elements of a *prima facie* case are: (1) the plaintiff engaged in protected activity; (2) she suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action. *Lewis v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, 134 F.4th 286, 295 (5th Cir. 2025).
[48] R. Doc. 12-4 at 2.

9

protected activity in which the complainant engaged.[49]  Therefore, Fields's retaliation claim must be dismissed with prejudice because she failed to exhaust her administrative remedies with respect to that claim.

### 2. Hostile-Work-Environment Claim

"In addition to protecting employees from race, sex, and national origin discrimination in the workplace, Title VII also makes it unlawful for employers to require 'people to work in a discriminatorily hostile or abusive environment.'"  *Wantou v. Wal-Mart Stores Tex., L.L.C.*, 23 F.4th 422, 432 (5th Cir. 2022) (quoting *Gardner v. CLC of Pascagoula, L.L.C.*, 915 F.3d 320, 325 (5th Cir. 2019)).  The elements of a hostile-work-environment claim are that "(1) [the plaintiff] is a member of a protected class; (2) [s]he suffered unwelcomed harassment; (3) the harassment was based on [her] membership in a protected class; (4) the harassment 'affected a term, condition, or privilege of employment'; and (5) 'the employer knew or should have known' about the harassment and 'failed to take prompt remedial action.'"  *Id.* at 433 (quoting *West v. City of Hous.*, 960 F.3d 736, 741 (5th Cir. 2020)).  "For harassment to affect a term, condition, or privilege of employment, it 'must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  *Id.* (quoting *West*, 960 F.3d at 741-42).  "The environment must be 'both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so.'"  *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998)).

"The totality of the employment circumstances determines whether an environment is objectively hostile."  *Id.* (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).  "Although no single factor is determinative, pertinent considerations are: (1) 'the frequency of the

---

[49] For example, the charge of discrimination does not state that Fields complained to her supervisors, nor does it advert to Fields's exclamation of "Excuse me" in reaction to the use of the racial slur.

discriminatory conduct'; (2) 'its severity'; (3) 'whether it is physically threatening or humiliating, or a mere offensive utterance'; and (4) 'whether it unreasonably interferes with an employee's work performance.'" *Id.* (quoting *Harris*, 510 U.S. at 23). "'Title VII, however, is not a general civility code.'" *Id.* (quoting *Faragher*, 524 U.S. at 788) (internal quotation marks omitted). So, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher*, 524 U.S. at 788.

Fields alleges two incidents that she says point to a hostile work environment. First, Tharp used a racial slur in front of her and, later, Gillis texted her a video in which that same slur was repeatedly used. While these allegations alone may not be sufficient to prevail on a motion for summary judgment, Fields has alleged enough facts at this pleadings stage to warrant further investigation through discovery, especially considering that Gillis is a supervisor. *See Johnson v. PRIDE Indus., Inc.,* 7 F.4th 392, 401 n.9 (5th Cir. 2021) (noting "that even 'isolated incidents' of harassment, if 'extremely serious,' can create a hostile work environment," and that other "circuits have concluded that even the limited use of severe racial epithets can rise to the level of a hostile work environment"). As such, Nucor's motion to dismiss Fields's hostile-work-environment claim is denied.

**IV.    CONCLUSION**

Accordingly, for the foregoing reasons,

IT IS ORDERED that Nucor's partial motion to dismiss pursuant to Rule 12(b)(6) (R. Doc. 12) is GRANTED as to the retaliation claim, which is DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that the motion is DENIED as to the hostile-work-environment claim.

New Orleans, Louisiana, this 19th day of September, 2025.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE